**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| STANLEY L. NIBLACK, | : | CIVIL ACTION NO. 05-900 (MLC) |
|  | : |  |
| Plaintiff, | : | **MEMORANDUM OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| CITY OF ASBURY PARK, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

**COOPER, District Judge**

The pro se plaintiff, Stanley L. Niblack ("Plaintiff"),
commenced this action under 42 U.S.C. § ("Section") 1983 alleging
that on December 26, 2002 and July 11, 2003, the defendants, the
City of Asbury Park, Phillip Montgomery ("Montgomery"), Jeffrey
White, and Daniel Newman "illegally searched and seized" him.
(Compl., at 6.)  Thus, in effect, Plaintiff asserted that the
defendants violated his rights under the Fourth Amendment to the
United States Constitution, as applied to the states under the
Fourteenth Amendment.  (See Compl.)  On May 11, 2005, the Court
sua sponte dismissed (1) Plaintiff's claim arising from the
allegedly unconstitutional search and seizure on December 26,
2002 as time-barred, and (2) the complaint insofar as it asserted
claims against the City of Asbury Park because the complaint
"does not indicate that the violation of his constitutional
rights resulted from a policy or custom of the City of Asbury
Park."  (Dkt. entry no. 6, 5-11-05 Ord., at 1; dkt. entry no. 5,

5-11-05 Mem. Op. at 6, 9.)  The Court also dismissed all remaining claims against Jeffrey White and Daniel Newman, who are City of Asbury Park police officers, on September 26, 2005, on Plaintiff's consent, because "they were not involved in the July 11, 2003 incident." (Dkt. entry no. 19, 9-26-05 Ord., at 2, 4.) Montgomery now moves for summary judgment, in effect, pursuant to Federal Rule of Civil Procedure ("Rule") 56.  (Dkt. entry no. 156.)  Plaintiff opposes the motion.  (Dkt. entry no. 166.)  The Court, for the reasons stated herein, will deny the motion.

### BACKGROUND

The Asbury Park Police Department assigned Montgomery to scout a crime suppression area in an unmarked vehicle on July 11, 2003.  (Dkt. entry no. 156, Indek Cert., Ex. B, Montgomery's Ans. to Interrogatories, at 2.)  That same evening, Plaintiff was driving in an area that Montgomery claims is well-known for drug trafficking.  (Id., Ex. D, 7-16-03 Montgomery Crime Report; Pl. Br., at 10; Def. Br., at 3.)  Plaintiff disputes that the area is known for its prevalence of drugs, but admits that it previously had such a reputation.  (Dkt. entry no. 156, Indek Cert., Ex. A, Niblack Dep. Tr., at 19; Pl. Br., at 14.)  Plaintiff saw Montgomery traveling in this same area in the unmarked vehicle. (Dkt. entry no. 156, Indek Cert., Ex. A, Niblack Dep. Tr., at 16; Pl. Br., at 10.)  Plaintiff recognized Montgomery because he had previously arrested Plaintiff for possession of narcotics on

2

December 26, 2002 after discovering 200 bags of heroin in
Plaintiff's vehicle.  (Dkt. entry no. 156, Indek Cert., Ex. A.,
Niblack Dep. Tr., at 17; Ex. D, 7-16-03 Montgomery Crime Report;
Pl. Br., at 10.)

Montgomery notified another officer that he had seen
Plaintiff driving.  (Dkt. entry no. 156, Indek Cert., Ex. D, 7-
16-03 Montgomery Crime Report.)  Plaintiff stated that he
believes Montgomery "said something to – cause [the officer] to
fabricate the reasons why [they] stopped [him]."  (Id., Ex. A,
Niblack Dep. Tr., at 48.)  Shortly thereafter, two police
officers, neither of whom were Montgomery, stopped Plaintiff's
vehicle. (Id. at 22; Def. Br., at 13.)  Plaintiff overheard the
officers talking about something that sounded like a motor
vehicle infraction, but he did not hear them clearly.  (Dkt.
entry no. 156, Indek Cert., Ex. A, Niblack Dep. Tr., at 23.)  One
of the officers questioned Plaintiff about whether he had any
drugs in his vehicle.  (Id.)  Plaintiff became agitated in
response to such questioning and cursed at the officers.  (Id. at
23-24.)  The officers advised Plaintiff that they had stopped him
because he had turned without using his blinker and had almost
hit a little girl.  (Id. at 24; Pl. Br., at 10.)

Plaintiff states that before Montgomery's arrival, the
officers asked him to step out of his vehicle.  (Dkt. entry no.
156, Indek Cert., Ex. A, Niblack Dep. Tr., at 24.)  He further

3

states that (1) they instructed him to put his hands on the trunk
of the vehicle, (2) one officer searched the driver's side of his
vehicle, and (3) one officer frisked him.  (Id. at 25.)
Montgomery "heard via radio that [Plaintiff] had been pulled over
during a traffic stop . . . [and] then proceeded to the
location".  (Id., Ex. D, 7-16-03 Montgomery Crime Report; see
id., Ex. G, 9-24-03 Salerno Mem. (noting that Montgomery was
"called to scene because officers knew that Montgomery is aware
of Plaintiff, based on prior association and the existence of a
possible secret compartment in his vehicle").)  Plaintiff claims
that Montgomery frisked him outside of his clothing.  (Id., Ex.
A, Niblack Dep. Tr., at 25-27; Pl. Br., at 11.)  Plaintiff also
claims that he saw Montgomery "go into the trunk of the vehicle,
[and] move some things around like he was looking for something."
(Dkt. entry no. 156, Indek Cert., Ex. A, Niblack Dep. Tr., at
30.)  Finally, Plaintiff contends that Montgomery interrogated
him without justification and asked him to be a confidential
informant.  (Id. at 33; Pl. Br., at 11.)  Montgomery, however,
contends that he did not frisk or interrogate Plaintiff, or
search any part of Plaintiff's vehicle.  (Dkt. entry no. 156,
Indek Cert., Ex. B, Montgomery's Ans. to Interrogatories, at 3-
4.)

     Plaintiff filed an Internal Affairs Complaint ("Complaint")
on July 16, 2003 with the Internal Affairs Bureau of the Asbury

Park Police Department against Montgomery and "3 unnamed officers" in reference to the July 11, 2003 stop.  (See id., Ex. C, Niblack's Complaint to the City of Asbury Park Internal Affairs Bureau.)  In response, Montgomery and Sergeant David DeSane prepared Special Reports on July 16, 2003.  (See id., Ex. D, 7-16-03 Montgomery Crime Report; Ex. E, 7-16-03 DeSane Crime Report.)  In a letter dated September 11, 2003, the Monmouth County Prosecutor's Office informed Plaintiff that the Complaint "does not rise to the level of criminal conduct."  (Id., Ex. F, 9-11-03 Prosecutor letter.)  Further, on September 24, 2003, Captain Anthony G. Salerno of the Asbury Park Police Department's Internal Affairs Bureau sent Plaintiff a letter advising him that the investigation into the Complaint was finished and he had "failed to prove wrongdoing, criminal or otherwise".  (Id., Ex. H, 9-24-03 Captain Salerno letter.)

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-248 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id.

6

at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the movant for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

## II.  Summary Judgment Standard Applied Here

A plaintiff, under Section 1983, must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States Constitution or the laws of the United States.  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws.  Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  For a Section 1983 claim to survive a motion for summary judgment, there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law, or (2) deprived the plaintiff of a federal right.  Groman, 47 F.3d at 633.  "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  Id. at 638.  Here, Montgomery, a police officer, was acting under color of state law at all times relevant to the complaint.  Once it has been shown that the defendant acted under color of state law, the Court must identify the federal right the defendant allegedly violated.  See id. at 633.  Plaintiff argues

7

that Montgomery violated his rights under the Fourth Amendment. (See Pl. Br., at 2.)

The Fourth Amendment prohibits "unreasonable searches and seizures". U.S. Const. amend. IV. Specifically, it protects persons, houses, papers, and effects from being unreasonably searched or seized, and requires probable cause before the issuance of a warrant. Texas v. Brown, 460 U.S. 730, 735 (1983). However, the Fourth Amendment does permit certain intrusions that are "less severe than full-scale searches or seizures without the necessity of a warrant." Id. at 736.

Plaintiff asserts that Montgomery violated his rights under the Fourth Amendment by allegedly (1) directing officers to stop his vehicle out of spite, (2) frisking him upon arrival at the scene, (3) searching his trunk, and (4) interrogating him and asking him to be a confidential informant. (Pl. Br., at 11; see dkt. entry no. 156, Indek Cert., Ex. A, Niblack Dep. Tr., at 25-30, 33, 47-49.) In contrast, Montgomery argues that the first allegation is unsubstantiated, and that even if the other allegations were true, they would not constitute Fourth Amendment violations. (Def. Br., at 24-27.) This Court finds that viewing the evidence in the light most favorable to Plaintiff, there are genuine issues of material fact regarding the alleged trunk search, and thus summary judgment is not appropriate.

"[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989).  The term "seizure" means either (1) "a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful," or (2) submission to the "assertion of authority." California v. Hodari D., 499 U.S. 621, 626 (1991).  "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002).  However, under the "narrowly drawn" exception to the warrant requirement established in Terry v. Ohio, 392 U.S. 1 (1968), "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000).  Under this standard, "a police officer may conduct a warrantless stop and frisk if specific and articulable facts, together with all rational inferences, suggest that the suspect was involved in criminal activity." United States v. Brown, 159 F.3d 147, 149 (1998).  This rule applies whether the criminal activity is ongoing or has already been completed. See United States v. Goodrich, 450 F.3d 552, 553 (3d Cir. 2006) (crime in progress); United States v. Brown, 448 F.3d 239, 244 n.7 (3d Cir. 2006) (completed felony).  Any evidence obtained pursuant to an

investigative stop that does not comply with the Terry standard
must be suppressed as "fruit of the poisonous tree."  See Wong
Sun v. United States, 371 U.S. 471, 487-88 (1963).

    "[T]he 'reasonable suspicion' inquiry is highly fact-
dependent in nature." Goodrich, 450 F.3d at 553.  The Court
"must . . . slosh . . . through the factbound morass of
'reasonableness.'" Scott v. Harris, 127 S.Ct. 1769, 1778 (2007)
(determining reasonableness of the manner in which Fourth
Amendment seizure of individual was effected, for purposes of
qualified immunity analysis in Section 1983 action).  However,
police officers are bestowed substantial deference to their
determinations of reasonable suspicion.  See, e.g., United States
v. Nelson, 284 F.3d 472, 482 (3d Cir. 2002).  Officers are
permitted to "draw on their own experience and specialized
training to make inferences from and deductions about the
cumulative information available to them that might well elude an
untrained person." United States v. Arvizu, 534 U.S. 266, 273
(2002) (internal quotations omitted).  Reasonable, articulable
suspicion for a Terry stop requires only a "minimal level of
objective justification." United States v. Sokolow, 490 U.S. 1,
7 (1989).

    In evaluating whether there was an objective basis for
reasonable suspicion for the purposes of a Terry stop and frisk,
we consider the "totality of the circumstances" that the police

officer confronted.  United States v. Cortez, 449 U.S. 411, 418 (1981).  There are a wide range of factors that can be relevant in evaluating the totality of the circumstances, including the reputation of the area in which the stop occurred for criminal activity.  See Goodrich, 450 F.3d at 561-63; Wardlow, 528 U.S. at 124 ("[T]he fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a Terry analysis.")  Another relevant factor is an officer's knowledge of the suspect's criminal history.  United States v. McGlory, 968 F.2d 309, 343 (3d Cir. 1992) ("[The Officer] was familiar with [defendant's] 'modus operandi' as a drug trafficker.")

In order to perform a search of the interior of a suspect's vehicle once a Terry stop has occurred, reasonable suspicion must increase to the level of probable cause.  United States v. Rickus, 737 F.2d 360, 366 (3d Cir. 1984).  "[P]robable cause is a flexible, common-sense standard," and a determination that probable cause existed is made when "given all the circumstances ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Brown, 460 U.S. at 742; Illinois v. Gates, 462 U.S. 213, 214 (1983).

Plaintiff has offered no evidence to substantiate his allegation that Montgomery directed the other officers to pull him over.  In fact, Plaintiff admitted that this allegation is speculative.  (Dkt. entry no. 156, Indek Cert., Ex. A, Niblack

11

Dep. Tr., at 48-49.)  Also, Plaintiff has not shown that the mere act of communicating his location to other officers to keep them alerted as to his presence implicates any constitutional rights. Therefore, Plaintiff has not rebutted the showing that Montgomery did not violate any of Plaintiff's constitutional rights when he alerted other officers that he had seen Plaintiff traveling through a known drug trafficking area.  (Id., Ex. D, 7-16-03 Montgomery Crime Report.)

Montgomery also did not violate Plaintiff's Fourth Amendment rights when he arrived at the location where Plaintiff had been stopped by the other officers.  Plaintiff alleges that Montgomery searched both his person and the trunk of his vehicle.  (Pl. Br., at 11.)  Montgomery, however, contends that he did not perform such searches.  (Dkt. entry no. 156, Indek Cert., Ex. B, Montgomery's Ans. to Interrogatories, at 3-4.)  Nevertheless, even assuming Plaintiff can demonstrate that Montgomery frisked him, this would not violate the Fourth Amendment since Montgomery had a reasonable, articulable suspicion that Plaintiff was involved in criminal activity.  See Wardlow, 528 U.S. at 123.

Plaintiff stated that when Montgomery arrived on the scene, the other officers had already initiated a search of his vehicle. (Dkt. entry no. 156, Indek Cert., Ex. A, Niblack Dep. Tr., at 25, 43.)  Also, earlier that day, Montgomery saw Plaintiff in an area known for drug trafficking.  (Id., Ex. D, 7-16-03 Montgomery

12

Crime Report; Ex. A, Niblack Dept. Tr., at 19 (admitting that the area where he was stopped had been known for drug activity).) See Wardlow, 528 U.S. at 124 (noting that the crime rate of the area can be considered in determining whether there was reasonable suspicion).  Montgomery previously arrested Plaintiff for drug possession after finding heroin in Plaintiff's vehicle. (Dkt. entry no. 156, Indek Cert., Ex. D, 7-16-03 Montgomery Crime Report.)  See McGlory, 968 F.2d at 343 (stating that knowledge of a suspect's criminal history can be considered toward reasonable suspicion).  Thus, the Court concludes that it would have been permissible for Montgomery to frisk Plaintiff in light of the totality of the circumstances.  Moreover, Montgomery would not have violated Plaintiff's Fourth Amendment rights by questioning him about matters and circumstances beyond the scope of the stop. (See dkt. entry no. 156, Ex. A, Niblack Dep. Tr., at 33 (stating that Montgomery interrogated him and asked him to be a confidential informant).)  See United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003) ("An officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation.").

The Court concludes, however, that based upon the limited factual record presented by Montgomery on this motion relating to the search of the trunk, there appear to be genuine issues of

material fact on several points.  The first factual issue ("issue (1)") is whether Montgomery searched the trunk of the vehicle. Montgomery denies that he made any search of the trunk.  (Dkt. entry no. 156, Indek Cert., Ex. B, Montgomery's Ans. to Interrogatories, at 3-4.)  Plaintiff disputes that denial, stating at his deposition that he witnessed Montgomery "go into the trunk of the vehicle, [and] move some things around like he was looking for something."  (Id., Ex. A, Niblack Dep. Tr., at 30.)  Viewing that factual dispute in the light most favorable to Plaintiff, as the Court must do in deciding this summary judgment motion, we must assume for purposes of this motion that Montgomery did reach inside - and thus search - the trunk.

That fact would not defeat summary judgment for Montgomery if either the search of the trunk by the group of officers, including Montgomery, was based upon probable cause ("issue (2)"); or Montgomery did not initiate the search of the trunk and, based upon all facts known to him when he reached into the trunk, he had no reason to doubt that the officers who did initiate the trunk search had acted properly ("issue (3)").

Montgomery does not dispute that as to issue (2), a search of the trunk in these circumstances would require that the officer initiating the trunk search must have possessed probable cause, rather than mere reasonable suspicion.  (Def. Br., at 23-24.)  He argues that there was probable cause for the officers to

14

search the trunk because Plaintiff was a known drug dealer who
had previously stored drugs in a hidden compartment in his car
and who was then driving in a known drug dealing area; and that
the officers who first encountered him made a traffic stop of his
vehicle.  (Id. at 26-27.)

    We disagree that those facts, without more, would amount to
probable cause to search the trunk area of the vehicle.  See
Brown, 460 U.S. at 742 (stating that probable cause exists when
there is a "fair probability that contraband or evidence of a
crime will be found in a particular place").  The record provided
by Montgomery on this motion fails to describe sufficient
additional facts to establish a totality of circumstances that
would justify anything more than a brief Terry stop and frisk,
including a plain view examination of the passenger compartment
for contraband or weapons, and possibly a manual search of that
compartment for weapons.  See, e.g., United States v. Fogle, No.
06-501, 2007 WL 1395438, at *5-*9 (D.N.J. May 10, 2007)
(collecting and discussing cases).  Sufficient additional facts
may exist, such as the results of any canine search, or
suspicious conduct of Plaintiff during the traffic stop, or
answers Plaintiff gave to simple inquiries concerning his
itinerary, but no such facts appear in the present state of the
record.  There may have been voluntary consent given by Plaintiff
to search the trunk, which would obviate any requirement for

probable cause, but the record on this motion is likewise lacking such evidence.

Montgomery argues, as to issue (3), that he did not initiate the search of the trunk, "which was already opened by other [o]fficers" upon his arrival at the scene.  (Def. Br., at 34.) Assuming arguendo that such a fact would provide Montgomery with a basis for qualified immunity from liability here, that fact is asserted only in Montgomery's brief on this motion.  We have found no record citation for such a fact.  See Fed.R.Civ.P. 56(c).  On the contrary, Plaintiff testified at his deposition that he did not know who opened the trunk, but assumed it was Montgomery.  (Dkt. entry no. 156, Indek Cert., Ex. A, Niblack Dep. Tr., at 27.)  Nothing in the record, so far, establishes the fact that the opening of the trunk had been initiated by officers prior to Montgomery's arrival.  Therefore, there are factual issues precluding a ruling as a matter of law in his favor based on qualified immunity at this time.[1]  Summary judgment is denied,

---

[1]  Qualified immunity should be decided, if possible, prior to subjecting a defendant to trial.  See Skevofilax v. Quigley, 586 F.Supp. 532, 537 (D.N.J. 1984) (discussing qualified immunity as a mechanism to "dismiss insubstantial lawsuits without trial and thus safeguard the interests of deserving officials and of the public").  Montgomery may move to renew his motion for summary judgment based on this issue, and any other factual issues that could be resolved on summary judgment with a fuller record.  But this motion record is not sufficient to support the relief requested.

but the only issues remaining for further adjudication are those

relating to the alleged search of the trunk by Montgomery.[2]

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will deny the

motion for summary judgment.  The Court will issue an appropriate

order.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

_____

[2]   Montgomery also addresses a substantive due process claim
under the Fourteenth Amendment.  (Def. Br., at 28.)  However, if
Plaintiff is asserting a violation of his substantive due process
rights under the Fourteenth Amendment, such a claim is not
discernable from the allegations of the complaint.  Further,
Plaintiff has not alleged that he was deprived of any fundamental
right.  <u>See</u> <u>Hill v. Bor. of Kutztown</u>, 455 F.3d 225, 235 (3d Cir.
2006) (noting that to prevail on a substantive due process claim
the plaintiff must show that he or she has a "fundamental"
property interest or right).  Plaintiff also has not alleged that
Montgomery engaged in any conduct that would "shock the
conscience."  <u>See</u> <u>Fagan v. City of Vineland</u>, 22 F.3d 1296, 1298
(3d Cir. 1994) (holding that the substantive component of due
process can only be violated by governmental employees when
"their conduct amounts to an abuse of official power that shocks
the conscience"); <u>Thornbury Noble, Ltd. v. Thornbury Twp.</u>, 112
Fed.Appx. 185, 188 (3d Cir. 2004) (stating that conscience-
shocking activities "violate the decencies of civilized conduct
and [are] so brutal and offensive that they [do] not comport with
traditional ideas of fair play and decency") (internal quotations
and citations omitted).